UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-21392-DPG

MICHELLE MAUPIN ,

Plaintiff,

v.

THE SCHOOL BOARD OF MIAMI-DADE
COUNTY, FLORIDA, et al.,

Defendant.

_____/

FILED BY _____ D.C.

MAY 22 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## OPPOSITION TO DEFENDANTS TROY HOWARD AND LOLAMARIA ROBBIO'S MOTION TO WITHDRAW ANSWERS AND MOTION TO DISMISS

The Plaintiff, Michelle Maupin, *pro se,* hereby files this Opposition to Defendants Troy Howard and Lolamaria Robbio's Motion to Withdraw Answers and Motion to Dismiss. The Plaintiff states the following in support of this opposition:

The Defendants' attorney's failure to follow local rules which require a pre-filing conference and the Defendants' hastily filed, untruthful answers are not reasons to withdraw the Answers filed in this Court. By submitting those responses to the Court, the Defendants violated Rule 11(b)(4). The Plaintiff opposes the withdrawal of their Answers as explained in sections I, II, and III of this response.

This case challenges the School Board of Miami Dade County's failure to act on complaints against administrators regarding interference, retaliation and harassment of a teacher who was deemed to be a qualified individual and approved for ADA accommodations by Miami

Dade Schools Americans with Disabilities Act District Consultative Committee. (Document 17-Exhibit 1 ADA approval 2021-2022 and Document 17- Exhibit 2 ADA approval 2022-2023) The Plaintiff clearly meets the standards governing the form of a complaint contemplated by Federal Rules of Civil Procedure. This Court has subject matter jurisdiction in this matter, and the Complaint sufficiently alleges harm done to the Plaintiff. The Complaint was filed timely.

Additionally, the Plaintiff contends that the interference, harassment and retaliation she experienced was allowed to continue because of the Plaintiff's previous participation in a racial discrimination lawsuit against her previous employer.  That lawsuit occurred nearly 20 years ago outside of the state of Florida. Although it is a violation of the Plaintiff's Constitutional rights to discriminate against her for participating in the Title VII action, the School Board of Miami Dade County has done so. The Defendant School Board has allowed its administrators to disregard the rights of the Plaintiff because of her previous participation in the Title VII action. They have overlooked evidence which proves that administrators and others have blatantly lied about the Plaintiff's behavior and ability to perform her duties as a teacher. The Plaintiff complained about the interference, harassment and retaliation to regional and district administrators.

The Plaintiff is a member of United Teachers of Dade (UTD), the teacher's union. The Plaintiff filed a grievance. (Document 17- Exhibit 3- UTD Grievance Letter) However, there are no Articles in the teachers union contract which address nor provide guidance on protecting teachers from retaliation and interference. Because there is no way to address the retaliation teachers are subjected to by administrators, the grievance was written to address a direct violation of the contract. Edouard entered Maupin's classroom with students present and

1

attempted to force her to sign a document regarding an investigation in front of students. This was a direct violation of Article XXI Section 1. Due Process C. Harassment which states:

C. Harassment
1. Employees shall be free from unnecessary, spiteful, or negative criticism or complaints by administrators and/or other persons. Under no conditions shall management representatives express such complaints or criticisms concerning an employee in the presence of other employees, students, or parents, nor shall anonymous complaints be processed.
2. Employees should not be subjected to harassment, abusive language, upbraiding, insults, or interference by a parent or other person in the performance of the employee's duties.

Although the Plaintiff had substantial proof of interference, harassment and retaliation, the grievance was arbitrarily ended at Step III with a decision not to arbitrate. The Plaintiff was never provided with a specific reason for the decision not to move forward to allow an administrative judge to hear her claims.  Edouard's continued harassment and UTD's failure to move forward in the grievance process made it necessary to move forward with a complaint to the EEOC.

The Plaintiff filed a charge of discrimination on or about December 22, 2022. The Plaintiff expected the charge to be investigated. However, the EEOC closed the case after it had been open for approximately twenty days. The EEOC issued a Determination and Notice of Right to Sue but failed to follow normal procedures by offering conciliation between the parties. If the agency believed there was no merit to the Plaintiff's claims, a notice of "Dismissal and Notice of Rights" would have been provided to the Plaintiff. By issuing the Determination letter, the agency, although it states the merits of the case was not considered, considered the merits, but failed to allow the parties to enter into an informal resolution of the conflict. The case was closed and the School Board of Miami Dade County was not required to provide a response to the Plaintiff's claims.  The Plaintiff was faced with the option of allowing the abuses she

experienced to go on without addressing the very serious violations of her rights, or proceed through the court system.  So we now find ourselves before this Court with the expectation that someone will hear the Plaintiff's claims and consider the harm and damage that has been done to her.

The Plaintiff has properly pleaded her claims. However, the Plaintiff will stipulate and agree to amend the Complaint to satisfy the Defendants' opposition to the format. Accordingly, the Defendants' motion regarding all other claims should be denied.

**I.  The Defendants did not conduct a pre-filing conference.**

The Defendants failed to contact the Plaintiff prior to filing. The Defendants state that an attempt was made to contact the Plaintiff at an email address that has not been designated for use for matters of this Court. The Plaintiff was unlawfully removed from her workplace on December 19, 2022. In January 2023, after the Plaintiff provided evidence that statements made about her were lies, her access to her Young Men's Preparatory School email was taken away. Her removal from her school's email list is a violation of policy. The Plaintiff has repeatedly asked her union representatives to have her access restored, but her requests have gone unanswered. The only information received in the email address are general emails from the district and spam.

The Defendants are aware that the Plaintiff is currently working at an alternate location. Since working at the alternate assignment when any official notice to the Plaintiff needs to be given, it has been delivered to her by the administrators at the worksite. Additionally, Robbio and Howard, had their Answers to the Complaint delivered to the Plaintiff at the worksite by certified mail. They were well aware of how to contact the Plaintiff.

Defendants could have easily contacted the Plaintiff through the email that has been given to this Court. Or, they could have contacted the Plaintiff by phone. The Plaintiff has not changed her phone number. The Plaintiff has her cell phone with her at all times. There are no restrictions about using her cell phone at her alternate work location.

The Defendants did not make reasonable efforts to contact the Plaintiff. Their motion to withdraw Answers should be denied.

## II. The Defendants' lack of legal counsel does not warrant withdrawal of their Answers.

Defendants Robbio and Howard filed their Answers well before the filing deadline. They were aware of the filing requirements and their answers were filed on time. The fact that they were not represented by legal counsel is of no consequence.

Although the Plaintiff sought legal counsel to handle her case, just before the filing deadline the attorney suddenly decided not to represent the Plaintiff. The Plaintiff was forced to proceed without counsel. Their new legal counsel is free to represent the Defendants, but their Answers filed in this matter should remain.

The Defendants answered the Complaint. Their new legal counsel is free to handle their case from here. The Defendants' motion should be denied.

## III. Although the Defendants were aware that their Answers needed to be truthful, they both submitted false statements to this Court.

Defendant Troy Howard responded to Paragraph 21 of the Complaint by stating, "Without Knowledge". Howard was a witness in the investigation and provided false testimony regarding the Plaintiff. The Plaintiff submitted questions to Howard and he submitted responses. (See Exhibit 1- Howard Question and Answer Title IX) Howard's response that he is "Without Knowledge" is simply not true.

Howard denies that allegation in Paragraph 48 of the Complaint. However, while he was on alternate assignment he was allowed to file cases against the Plaintiff. Howard was placed on alternate assignment at the end of February 2022. He did not return to the school building until sometime during the 2022-2023 school year.  The Plaintiff questioned why someone who was not working in the building was allowed to file complaints about the Plaintiff. No one gave the Plaintiff an answer.

Paragraph 53 of the Complaint is related to the matter of filing cases against the Plaintiff while Howard was out of the building on alternate assignment for striking a student. Howard's response to Paragraph 53 is that he is "Without Knowledge" of the Plaintiff's allegation. However, as Exhibit 2 to the document shows that Howard did, in fact, file a complaint against the Plaintiff when he was on alternate assignment. (See Exhibit 2- Notification Case C-85531)

Paragraph 57 of the Complaint references the lawsuit that Howard filed against the Plaintiff. Howard alleged that the Plaintiff started rumors about him that were not true. One allegation that he made was that the Plaintiff started a rumor that Howard had been caught in the bathroom with students. (See Exhibit 3- Security Guard's Affidavit) The Plaintiff did not do this as the allegation that he was caught in the bathroom with students is true. Students and many members of the faculty discussed the matter; however, Howard blamed the Plaintiff as if she made up the incident and started the rumor.

Robbio provided inaccurate responses to the Complaint as well. Robbio's response to Paragraph 22 states that she has, "unknown knowledge of this accusation." However, Robbio admitted in her CIU interview that she printed the petition and gave it to students. (Exhibit 4- Page 1 Robbio CIU Interview)

5

The Defendants' untruthful responses should be allowed to remain in the record. Telling the truth about an issue is easy to do. One does not need a lawyer to tell the truth. For this reason, the Defendants' motion should be denied.

### IV.  The Plaintiff has sufficiently pleaded her claims.

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts which are sufficient to, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The Defendants allege that the Plaintiff has failed to state a claim. While the Defendants claim that the Plaintiff has failed to alleged facts which, per *Twobly* at 557, "...cross the line between possibility and plausibility of entitlement to relief…," the Defendants cannot deny the fact that the EEOC found merit to the Plaintiff's claim that the Defendants violated her rights; the agency filed a Letter of Determination and Notice of Right To Sue rather than filing a Dismissal and Notice of Rights.

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir. 1998)). The Plaintiff met the standard set by Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) which states that a complaint, "...must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."

Additionally, the Complaint is lengthy enough to ensure that there is a clear understanding of the matter at hand. The complaint must contain, "...enough facts to state a claim to relief that is plausible on its face." *Twobly* at 570. And these factual allegations must raise a right to relief that is more than speculative." *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d

955, 974 (11th Cir. 2008). Also, Federal Rules of Civil Procedures do not require attachments to a Complaint. *Camac v. Long Beach City School District*, 09 CV 5309 (DRH) (ARL), 9-10 (E.D.N.Y. Jul. 22, 2011) ("In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the allegations on the face of the complaint, but may also consider "[d]ocuments …incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the complaint…and documents incorporated by reference in the complaint") (citation and internal quotation marks omitted). ")

The Plaintiff has alleged harm and injury in the paragraphs of the Complaint. The claims present the most egregious conduct by the Defendants due to the purposeful and malicious manner in which the Plaintiff was treated by them. The Plaintiff has met the burden of pleading facts that allow the Court to, "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). As a result of the Defendants' failure to identify any of the stated facts as insufficient, the motion must be denied.

**V.    The Plaintiff's Complaint is timely.**

The Defendants is correct that the Notice of Right to Sue (NRTS) is dated January 11, 2023; however, the Plaintiff did not receive the document on that date. When the Plaintiff filed the Charge of Discrimination on or about December 22, 2023, the Plaintiff received an email with a descriptive subject line that stated "Confirmation of Charge Receipt". (Document 17- Exhibit 4- Email Confirmation of Charge) That notice was sent during normal business hours. The Confirmation of the Charge was received at 11:54 A.M.

The Plaintiff added a document to the EEOC file on or about January 10, 2023. The Plaintiff then received a generic email dated January 11, 2023 at 10:53 P.M. The subject line of the email stated, "Document Added to EEOC Charge 510-2022-02350".  The Plaintiff had an appointment which she went to directly after work on January 12, 2023. Maupin did not notice the email until the evening of January 12, 2023, after the Plaintiff returned home from work.

The Plaintiff assumed that the notice was regarding the document she filed or that the employer had provided a statement regarding the charges.  There was no indication that the document added was a document closing her file. The email went to the Plaintiff's email account well after business hours. There was no way for the Plaintiff to retrieve the document on January 11, 2023, at 10:53 P.M.. The Plaintiff goes to bed early because she has to wake up at 4:45 A.M. due to the fact that the Defendants removed her from the worksite at Young Men's Preparatory Academy. Due to increased traffic on the route to the alternate worksite, Stores and Distribution located near the Miami International Airport, the Plaintiff goes to bed early, around 9:30 P.M., so that she can get up at 4:45 A.M. in order to allow her to arrive on time by 7:10 A.M. At the alternate worksite, there is one computer shared by at least eight individuals. The Plaintiff does not access her private email at the worksite.

The Plaintiff was stuck in traffic leaving the area surrounding the airport and she had a previously scheduled appointment. She arrived home late on the evening of January 12, 2023. The Plaintiff opened the email in the early morning hours on January 13, 2023. There was no attachment to the email. (Document 17- Exhibit 5-Email Document Added to EEOC Charge 510-2022-02350) There was nothing in the email that indicated that an important document had been added. The Plaintiff had no reason to believe that the case she filed on December 22, 2022, had been closed 20 days after it was opened without a response from the Defendants.

8

The email had no attachments, but it directed the Plaintiff to go to the Public Portal to retrieve the added document. The Plaintiff went to the EEOC's Public Portal and accessed her file on January 13, 2023. To her surprise, the investigator closed her case and issued a Determination and Notice of Right to Sue (NRTS). (Document 17- Exhibit 6- Notice of Right to Sue) The NRTS reads as follows:

> …This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice…**

Since the NRTS was not attached to the email which was sent at 10:53 P.M. on January 11, 2023, the Plaintiff did not receive the document until she accessed the site in the early morning hours of January 13, 2023. The document does not state that a lawsuit must be filed 90 days from the date of the letter. The document states that a lawsuit must be filed 90 days from the receipt of the document. The Plaintiff's Complaint was timely filed on April 13, 2023.

Federal Rules of Civil Procedure Rule 6(a)(1) Computing and Extending Time; Time for Motion Papers states, "Period Stated in Days or a Longer Unit. When the period is stated in days or a longer unit of time; (A) exclude the day of the event that triggers the period…". The day which triggered the period would have been January 13, 2023; the day the Plaintiff received the letter. Counting started on January 14, 2023. The lawsuit was timely filed on April 13, 2023.

Additionally, the 11th District has previously analyzed timelines "…on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimum responsibility . . . without conditioning a claimant's right to sue . . . on fortuitous circumstances or events beyond [her] control." *Fortun v. iAero Thrust LLC*, 21-cv-23348-BLOOM/Otazo-Reyes, (S.D. Fla. Feb. 14, 2022). The Plaintiff's receipt of an email at 10:53 P.M. was completely beyond her control. The Plaintiff did not

9

request closure of her EEOC complaint. She had no reason to believe that the case would have been closed before the Defendants were required to provide a statement.

In the 11th District, the Honorable Judge Beth Bloom denied a defendant's Motion to Dismiss for a lawsuit allegedly filed at 105 days stating, "...although the parties disagree as to the exact receipt date of Fortun's EEOC Notice, the lack of clarity does not provide a ground for dismissal. " *Fortun v. iAero Thrust LLC*, 21-cv-23348-BLOOM/Otazo-Reyes, (S.D. Fla. Feb. 14, 2022) As well, the lack of clarity in this case does not provide support for dismissal of the Plaintiff's case. Courts have also used the "three-day presumption" adopted in *Payan v. Aramark Management Services, L.P.*, 495 F.3d 1119 (9th Cir. 2007). In *Payan*, the Court stated that when a plaintiff does not know the actual date she received her NRTS notice at her residence—as was the case in *Payan*, 495 F.3d at 1122—the court will presume the EEOC notice was mailed on the date printed on the document and was received by the plaintiff three days later.[1] *Payan*, 495 F.3d at 1123, 1125; *accord Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999) ("*[I]n the absence of other evidence*, courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it.") The Plaintiff's Complaint was timely filed. The Defendant's motion should be  denied.

## VI.    Count II: The Plaintiff is not restricted to pleading claims made on the Charge of Discrimination.

Contrary to the Defendants' belief, courts have found that the Plaintiff did not need to include every claim made in her Complaint on her Charge of Discrimination. The Plaintiff was asked to make a general determination of the reason for the charge. (Document 17- Exhibit 7- Charge of Discrimination) Pursuant to 42 U.S.C. § 12117(a) administrative remedies must be

---

[1] In this matter, the Plaintiff did not receive an NRTS by mail. Also, the document was not attached to the email sent at 10:53 P.M. on January 11, 2023. As such, January 11, 2023, cannot represent the date of receipt.

exhausted by filing a charge with EEOC. *Booth v. City of Roswell,* 754 F. App'x 834, 836 (11th Cir. 2018). However, "...strict compliance...is unnecessary where the plaintiff has filed a charge with the EEOC, but in [her] judicial action the plaintiff raises related issues as to which no filing has been made." *Wu v. Thomas,* 8663 F.2d 1547 (11th Cir. 1989). "As long as allegations in the judicial complaint and proof are 'reasonably related' to charges in the administrative filing and 'no material differences' between them exists, the court will entertain them." *Ray v. Freeman,* 626 F.2d 439, 443 (5th Cir. 1980).

Congress gave the EEOC the responsibility of prescribing the contents of a charge of discrimination, *see* 42 U.S.C. § 2000e-5(b), and the EEOC adopted a regulation providing a charge is sufficient if it "describe[s] generally the action or practices complained of." 29 C.F.R. § 1601.12(b). The Supreme Court noted in its *EEOC v. Shell Oil Co.* decision that, Title VII has never required aggrieved individuals to set out detailed facts in their charge. *Shell Oil,* 466 U.S. at 62 n.11 The Supreme Court's decision rejected the previous interpretation of some earlier courts that Title VII required aggrieved individuals to set forth the facts upon which the charge is based.

Moreover, courts have held that, "Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 482 (7th Cir. 1996) The EEOC proffers that a claim is sufficient to satisfy the prerequisite for a Title VII claim in a Complaint if the Plaintiff has satisfied the requirements of filing the charge of discrimination. Title VII "prescribes only minimal requirements pertaining to the form and content of charges of discrimination." *EEOC v. Shell Oil Co.,* 466 U.S. 54, 67 (1984).

11

The Plaintiff's charge satisfies the requirements pertaining to filing a charge. It is plainly in writing and she signed it under oath. Most importantly, Maupin's charge described generally the alleged violation, stating that she was subjected to "ongoing harassment".[2] The charge makes clear that the practices and actions complained of are harassment and that the Defendants' decision altered the terms of the Plaintiff's employment. The Plaintiff submitted a timeline to her EEOC file which showed the extent of the harassment she experienced. (**Document 17- Exhibit 8- Timeline of Harassment and Bullying**) This is a "clear and concise statement of the facts," pursuant to  29 C.F.R. § 1601.12(a)(3), and it plainly "describe[s] generally the action or practices complained of." 29 C.F.R. § 1601.12(b). It identifies the type of discrimination, harassment, the alleged harasser, Pierre Edouard, and the pertinent time period. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1260 (10th Cir. 1998) (holding that allegations are "minimally sufficient to satisfy the requirements for the contents of a charge of discrimination and the purposes of the notice requirement" when they "identif[y] the type of discrimination complained of, the alleged harasser, and an approximate time period"].  As such, the Defendants' motion to dismiss should be denied.

## VII.    Counts I and III:  ADA Retaliation and Interference are related issues and both are appropriate claims.

In order to prevail on a claim of retaliation, a plaintiff must provide evidence that shows that (1) an individual was engaged in prior protected activity; (2) the employer took a materially adverse action; and (3) retaliation caused the employer's action. In this action, there is no doubt that the Plaintiff engaged in protected activity. The Plaintiff found it necessary to file a complaint against Pierre Edouard for violating her rights under the ADA. The Plaintiff filed a complaint

---

[2] The Plaintiff stated that there was ongoing harassment on the charge. She submitted additional pages which included additional incidents which described ongoing harassment, interference and retaliation.

with the Miami Dade County Schools Office of Civil Rights Compliance (CRC) in August 2021. (Document 17- Exhibit 9- CRC Complaint)

The matter involved Defendant Edouard refusing to provide the personal protective equipment (PPE) that was purchased for her with CARES Act funds prior to the start of the 2021-2022 school year. The Plaintiff, and every public school teacher in the district, was awarded the funds so that schools could purchase the items teachers specified for use in the classroom.

The equipment necessary for the Plaintiff's safety was spelled out in her ADA approval letter dated August , 2021 (See Document 17- Exhibit 1) The letter stated, "It is the Committee's understanding that you will receive additional PPE equipment including, but not limited to, mask [sic], gloves, face shields and Plexiglass. This request is granted through the end of the 2021-2022 school year." Edouard refused to provide the Plaintiff with the PPE as stated by the Committee.[3]

After the Plaintiff filed the CRC complaint for the ADA violations, Edouard filed and encouraged coworkers and students to file complaints against the Plaintiff in retaliation. Prior to the 2021-2022 school year, the Plaintiff had no complaints filed against her. There were no negative items in her personnel file. After the Plaintiff participated in the investigation regarding the violation of her ADA rights there were at least five different investigations filed based upon false allegations against the Plaintiff in a short period of time.

The last case filed in December 2022, was used as grounds for the adverse action of removing the Plaintiff from her teaching position and demoting her to work in the mailroom. The Title IX closing letter in Maupin's favor led to the actions Robbio took against her. After the

---

[3] The Plaintiff provided the CRC investigator photos of the PPE meant for her use on the floor in the front office not being used. In October 2022, after the photos were sent, Edouard provided the Plaintiff her PPE. The investigator found no probable cause even though her PPE was withheld from August until October 2022.

Title IX filing against the Plaintiff by Edouard, he enlisted students and faculty members to file complaints against the Plaintiff.

According to verbal and written statements from students, Defendant Robbio wrote a petition and asked students to sign the petition to have the Plaintiff removed from her workplace. (Document 17- Exhibit 10- Petition Letter Signatures Omitted) Students reported that they went to Robbio to convince her to speak to Edouard because they did not want to complete their end of quarter performance assessment assignment in Maupin's class. They wanted Robbio to convince Edouard to force the Plaintiff to cancel the assignment. The Plaintiff has no knowledge of whether or not Robbio spoke to Edouard, but students reported being in her office when she wrote the petition, printed it and gave it to AT to have him collect signatures from students. (See Document 17- Exhibit 11- Note from NC at the bottom of the page)

Students told the Plaintiff about the petition. The Plaintiff used the petition letter to complete a lesson on grammar and usage as there were many mistakes. A student, AT, used his cell phone and recorded the Plaintiff teaching the lesson. During the lesson, the Plaintiff was angry, but she explained that she didn't blame students for the petition. She advised students not to get involved with adults who ask them to do such things. During the lesson the Plaintiff never mentioned Defendant Robbio's name to students.

After the lesson with the class, the Plaintiff requested an investigation into ethics violations against Robbio. (See Document 17- Exhibit 12 -Request for Investigation of Robbio ) However, Edouard used the student's recording and took statements made by the Plaintiff out of context and allowed Robbio to file a complaint against the Plaintiff. (See Document 17- Exhibit 13- Notice of Investigation against Maupin) Edouard used the unwarranted investigation of the Plaintiff as a reason to remove her from her workplace.

14

Although Robbio denied any knowledge of the petition in her Answer to the Complaint, in testimony provided to the Civilian Investigative Unit (CIU) she admitted that she printed the document and gave it to AT.[4] (Document 17- Exhibit 14- Robbio CIU investigation statement) There is no doubt that a coworker writing a petition to have a colleague removed from the workplace is interference. The act was meant to deter the Plaintiff from complaining about the continued violation of her rights.

The ADA's Interference Clause makes certain employer behaviors unlawful. These behaviors include the following: coercion, intimidation, threatening behavior, interference with an individual exercising one of his or her rights under the ADA, or for aiding or encouraging someone else to enjoy these same rights. The Plaintiff's charge includes the description of the December incident which caused her to file the Charge of Discrimination. The incident described on the Charge of Discrimination is exemplary of the definition of ADA Interference; the plaintiff believes it was meant as a threat and intimidation. However, it is clear that there is some retaliatory overlap.[5]

The Plaintiff found no requirement to exhaust remedies specific to ADA Interference. The Charge of Discrimination was completed and Plaintiff fulfilled the requirements to exhaust remedies for ADA. As such, the Plaintiff

After the Plaintiff requested an investigation into the matter on December 15, 2022, Edouard used the student's recording to remove the Plaintiff from her workplace and initiated an investigation against Maupin instead of investigating Robbio as Maupin requested. (See Document 17- Exhibit 15- Terms and Conditions of Alternate Assignment) Defendant Swain and

---

[4] In Paragraph 22 of Robbio's Answer she states that she has no knowledge of the accusation.
[5] Edouard and Howard were upset that the Plaintiff was found not responsible for the Title IX claims made against her. Although Edouard filed the complaint against the Plaintiff, when she was questioned, investigators asked her about a relationship between Edouard and Troy Howard.

Edouard altered the conditions of the Plaintiff's employment and subjected the Plaintiff to an adverse employment action. The Plaintiff has been a teacher for nearly 30 years. The Defendants currently have her working in the mailroom during a very critical teacher shortage.

Sometime in January 2023, Edouard removed Maupin's access to her class files on Schoology, the gradebook and all learning platforms. This prevented Maupin from being able to fully participate in the investigative process by limiting her access to evidence.

Prior to the December 14, 2022, incident, Defendant Edouard encouraged Howard and several students to file complaints against the Plaintiff. More than five false complaints were filed that led to CIU investigations against the Plaintiff. With each CIU investigation filed, the Plaintiff was directed that she could not speak to her coworkers, parents and students. Filing the multiple investigations, the ongoing harassment and retaliation, interfered with the Plaintiff's rights under the ADA. The Plaintiff could not enjoy the normal day to day activities of being a teacher. The Plaintiff had to be careful about who she spoke to and what she said during her classes. Students were routinely meeting with Edouard before and after her classes and reporting what was done in class. When Edouard found something he could manipulate into an investigation of the Plaintiff, he encouraged the students to file complaints and, in many cases, fabricate things that the Plaintiff would have done or said in her classroom. The excessive investigations were intimidating. The Plaintiff had to stop sponsoring the Anime Club at Young Men's Preparatory Academy. Maupin had a good rapport with most of her students. Edouard's unusual interaction with the students created tension and ruined the teacher's relationships with families she had known for years as she had taught several students from the same families.

The most damaging act of interference involved Edouard, Molina and Zabala sending documents regarding the Plaintiff's previous participation in a Title VII lawsuit to the Office of

16

Professional Practices Services (PPS). (Document 17- Exhibit 16- Document regarding Maupin's previous Title VII claims) PPS investigates claims of misconduct of teachers and administrators. The Plaintiff believes their intent was to send the document with the hopes that PPS would not recommend Maupin for reinstatement of her teaching certificate.[6]

Similarly, Defendant Howard retaliated against the Plaintiff because he believed that she called the Department of Children and Family services to report him. The Plaintiff did not do so. However, Howard conducted an "investigation" of the Plaintiff. He found the articles about the Plaintiff's prior participation in a Title VII lawsuit and he displayed a disparaging letter about Maupin on the whiteboard in his classroom for students to see. A student took a picture of his whiteboard and brought it to the Plaintiff. The Plaintiff sent an email to the Regional Superintendent, Michael Lewis, to request help with the situation since Edouard refused to do anything about the harassment.[7] (See Document 17- Exhibit 17- Email to Mr. Lewis re Howard's Inappropriate Actions) at the bottom of the white you can see folders labeled "Maupin Statement"; "Maupin Article"; "Maupin Grievance to UTD"

In *EEOC v. Day & Zimmerman NPS, Inc.*, Case No. 15-CV-01416 (D. Conn Apr. 12, 2016) the court found that while the EEOC did not allege any direct evidence of DZNPS's intent behind the employer disclosing information about an employee to others, the issue of an employer's intent is a question of fact that cannot be resolved on a motion to dismiss. Further, the Court held that "the disclosure of sensitive personal information about an individual could well dissuade that individual from making or supporting a charge of discrimination under the ADA." In *EEOC v. Day & Zimmerman,* the defendant's motion to dismiss the ADA retaliation

---

[6] PPS recommended renewal and Maupin's certificate was finally renewed seven months after she applied.
[7] The photo shows that at the bottom of the white you can see folders labeled "Maupin Statement"; "Maupin Article"; "Maupin Grievance to UTD". Howard filed a grievance against the Plaintiff. He was unaware that grievances could only be filed against administrators.

and interference claims were denied by Judge Victor A. Bolden of the U.S. District Court for the District of Connecticut on the grounds that the EEOC's allegations were sufficient to state plausible claims for retaliation and interference under the ADA. The Plaintiff in this case believes that the Defendants motion should be denied on the same grounds.

Defendants Edouard, Molina, and Zabala elected to send all of the false allegations against the Plaintiff to PPS. They sent a file of more than 200 pages that were compiled starting after the Plaintiff complained about Edouard's refusal to provide ADA accommodations.

Included in the file submitted to PPS was the first case Edouard filed against the Plaintiff.[8] Edouard falsified the complaint by listing a coworker as the complainant without her knowledge. An employer's action may be both retaliation and interference according to the EEOC and "may [also] overlap with unlawful denial of accommodation."[9] The Defendants' action of unlawfully removing the Plaintiff from her workplace and demoting her to work in the mailroom are allegations which support her claim of retaliation and interference. While the Plaintiff did not have the opportunity to amend her EEOC charge to include the word "Interference",[10] the Plaintiff claimed retaliation and made allegations sufficient to state plausible claims for interference and as such, the Defendants' motion should be denied.

## VIII.   Count II:  Hostile work environment and retaliation for engaging in protected activity are appropriate claims under Title VII and ADA.

The Plaintiff clearly states claims for retaliation and hostile work environment under Title VII. As well as a hostile work environment under the ADA. Retaliation by an employer occurs

---

[8] On January 19, 2022, Troy Howard called the Plaintiff a "bitch" in front of students. Edouard reversed the allegation. He accused the Plaintiff of using profanity. He filed the complaint listing Selena Ross-Miranda as the complainant. In March 2022, Ross-Miranda found out about the complaint and admitted that she never filed the complaint. Carmen Molina admitted to sending the complaint to PPS on February 14, 2022; the same day that the Plaintiff filed a police report because Howard hit her with his Range Rover.

[9] EEOC Questions and Answers: Enforcement Guidance on Retaliation and Related Issues, Question 19.

[10] The EEOC issued a letter of Determination and closed the Plaintiff's case prior to the Defendants providing a response. The Plaintiff had no opportunity to examine the response and amend her charge.

when the employer bases an adverse employment action on an employee's exercise of any of his or her federal or state rights.  To establish a prima facie case of retaliation, a plaintiff must show "1) that she engaged in protected activity, 2) that the employer took adverse action against her, and 3) that a causal link exists between the protected activity and the employer's adverse action." *Kachmar v. Sungard Data Sys., Inc.*

It is clear that the Plaintiff engaged in protected activity. She filed complaints against Defendant Edouard for violation of her ADA rights. After filing the complaints, the Plaintiff was subjected to numerous investigations based on false allegations which amounts to intentional harassment. On February 14, 2022, Defendant Howard struck Maupin with his Range Rover as she walked across the parking lot. (Document 17- Exhibit 18- Police Report) Maupin requested that police be called to handle the matter. Edoaurd refused to call until he saw the Plaintiff exit the building to make the phone call herself. On October 18, 2022, after a meeting with Molina, Edouard and Swain, the Plaintiff submitted a statement which outlined the retaliatory nature of the actions being taken against her. (Document 17- Exhibit 19- October 2022 CFR Statement) Most recently, on December 14, 2022, the Plaintiff received the Title IX investigation decision letter which found that she was not responsible for the allegations made by Edouard. (Document 17- Exhibit 20- Title IX Decision Letter)

In this matter the individual Defendants are blatantly committing ongoing, intentional violations of the Plaintiff's rights under the ADA. The intentional violations are so pervasive that they create a hostile work environment.  Edouard intentionally withheld the Plaintiff's pay after she filed the first ADA request for accommodations which were approved for the 2020-2021 school year. The accommodations allowed Maupin to teach from home for the entire 2020-2021

school year.[11]  Document 17- Exhibit 7, Timeline of Harassment and Bullying, provides a list of the intentional actions and violations of the Plaintiff's Constitutional rights.

The intentional actions continued when Edouard disregarded the Plaintiff's request for an investigation as to the origin of the petition written about her and instead initiated an investigation against the Plaintiff. According to students, Robbio wrote the petition. This intentional action of writing a petition and disseminating it to the Plaintiff's students was an intentional act of harassment. These actions create a hostile work environment under Title VII and the ADA.

Edouard, Molina and Zabala sending the information to PPS regarding the Plaintiff's previous participation in a Title VII action cannot be overlooked. Those documents were not accidentally placed in the Plaintiff's file with the state agency. The documents have nothing to do with her employment with the School Board of Miami Dade County. The actions of the Defendants were intentional and meant to cause an adverse action. The Plaintiff believes that the Defendants wanted her to do something that would warrant termination or that she would tire of their antics and quit.[12]

Defendants Edouard and Swain intentionally caused an adverse action against the Plaintiff.  Both intentionally violated the Plaintiff's due process rights. On December 19, 2022, Swain had no idea of the allegations against the Plaintiff; she waited until she received written allegations from Edouard before providing the Plaintiff with written notice. Swain refused to reschedule the disciplinary meeting to allow Maupin's UTD representative to be present. Maupin was given verbal and written notice of an investigation and removed from her worksite

---

[11] In November 2020, Defendant Edouard lied to Miami Dade Schools Labor Relations Board. He stated that the Plaintiff failed to return to her class after a workshop. The Plaintiff presented her chat logs to prove that she was present for the full class period. Her pay was finally restored in March 2021.
[12] The Plaintiff requested a transfer prior to the start of the 2021-2022 school year, but her request was denied. (See Document 17- Exhibit 1)

at the same time. Swain took actions against the Plaintiff before she heard the recording made by AT during class on December 14, 2022. Edouard had taken the pieces of the recording out of context and pieced it together to make it seem as if the Plaintiff had violated policy. Swain, Edouard, Molina and Zabala rushed to conclude the investigation which ignored the Plaintiff's evidence and included false statements from faculty and students.

Molina refused to provide the Plaintiff with a copy of the recording they used to determine that she needed to be removed from the workplace; other evidence was provided to the Plaintiff. The Plaintiff believes that after listening to the recording, district administrators realized that there was nothing that warranted the Plaintiff's removal from the classroom. Maupin's UTD representative was able to set up a meeting, three months after the Plaintiff was removed from her workplace, to allow the Plaintiff to hear the recording.

It is clear that the Plaintiff has been harassed and retaliated against for opposing the Defendants' behavior. The Defendants are well aware of their actions. They have been allowed to continue without any reprimand. If there have been directives given to the individual Defendants regarding their conduct, those directives have clearly been ignored. The Defendants have no right to continue their harassment of the Plaintiff. "Thus, the anti-retaliation provision not only unequivocally confers on those whom it protects a federal right to be free from retaliation, but also imposes a correlative duty on all individuals to refrain from such conduct."*Shotz v. City of Plantation*, 344 F.3d 1161, 1168 (11th Cir. 2003)

**IX.** **Administrators who violate the Constitutional rights of employees can be held personally liable under ADA and Title VII.**

42 USC §1983 "provides a cause of action for the deprivation of any rights, privileges,

21

or immunities secured by the Constitution and laws by any person acting under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." Gomez v Toledo, 446 US 635, 638 (1980)(internal quotations omitted). In *Gomez*, the United States Supreme Court determined that only two elements must be pled to properly assert a cause of action under 42 USC §1983. First, the Plaintiff must specifically identify the constitutional right of which he or she was deprived. *Id*. at 640. Second, the Plaintiff must assert that "*the person who deprived him of that federal right acted under color of state or territorial law.*" *Id*.

The Plaintiff admits that she did not clearly convey the standard set in *Gomez*. The Plaintiff agrees that the Title VII and ADA claims need to be expressly stated to show her intent to allege that the Defendants acted under the color of state law to deprive the Plaintiff of several Constitutional rights. As such, the Plaintiff will amend the Complaint to clarify.

## X.     Defamation Per Se

The individual Defendants are not an entity and do not enjoy absolute immunity. The Michigan Court of Appeals found that malicious reporting would not be protected unduly by the absolute privilege and immunity from a defamation claim. Defendants Edouard, Molina, and Zabala engaged in malicious reporting when they sent the documents regarding the Plaintiff's previous participation in a Title VII proceeding to an agency that investigated wrongdoing of educators. While it is true that the Plaintiff participated in the proceeding, the only reason the administrators would send the documents to the agency that would have to authorize the Plaintiff's recertification would be to block her recertification.

Howard, Edouard, Molina and Zabala intended to harm the Plaintiff. They do not enjoy immunity for intentional acts meant to harm. Howard posted the documents for students to view. Edouard, Molina and Zabala's transmission of the documents was meant to imply a defamatory meaning. Florida law recognizes a cause of action for defamation by implication, which allows

plaintiffs to challenge statements that, while not false per se, create false impressions. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008). The Supreme Court has made clear that "[m]inor inaccuracies do not amount to falsity" and statements are only considered false if they "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (quoting R. Sack, *Libel, Slander, and Related Problems* 138 (1980)).

The Plaintiff was involved in Title VII action against one employer nearly 20 years ago. However, submitting those documents without comment imply that the Plaintiff is litigious or out to get school systems. That is simply not true. But for the fact that the School Board of Miami Dade County, district and regional administrators ignored the Plaintiff's requests for assistance, we currently find ourselves before this Court. The Defendants' motion to dismiss the claims must be denied.

The Plaintiff has a right to employment for which she is qualified. Although the Plaintiff is a very good teacher, the Defendants encouraged students to file false reports alleging that the Plaintiff did not teach her students, failed to grade their papers and only required students to do lessons from the iReady learning platform each day. (Document 17- Exhibit 21- AT CIU Interview)

Additionally, students were  encouraged to lie about the Plaintiff's behavior. BD falsely accused the Plaintiff of starting rumors about teachers. Due to the investigations, the Plaintiff had been restricted from speaking to her colleagues for most of the school year. The Plaintiff held no private conversations with students. This student blatantly made up the allegations in his interview with CIU. (Document 17- Exhibit 22- BD CIU Interview)

23

DB, in his CIU interview, falsely accused the Plaintiff of various things; however, the most outrageous is that the Plaintiff called AT's mother a "B' word". (Document 17- Exhibit 23- DB CIU Interview) No such incident has ever happened. As the Plaintiff stated to administrators in my rebuttal to the allegations, why would she have such a conversation with students?

The written statements are bad, but the students stating these things to one another are worse. Students discussed these issues with each other and that placed the Plaintiff in a difficult situation. The false statements created a rift between the Plaintiff and her student who have never heard nor witnessed any wrongdoing by the Plaintiff, but students are repeating the statements as facts.

I have never used profanity in my classroom. Yet several students were coerced into making statements that falsely accused the Plaintiff of doing so. The statements were made with malice. The statements submitted as evidence state that the intent is to get the Plaintiff fired. There was malicious intent to harm the Plaintiff. The parents of the students are liable. The Plaintiff rebutted the statements made in the investigative file and discussed the fact that evidence was ignored. (Document 17- Exhibit 24- Response to Conference for the Record Summary and attachments)

The Defendants have filed false allegations after false allegations. Claims have been made and actions have been taken against the Plaintiff without evidence of truth. It does not matter that the Plaintiff is still employed. The Plaintiff is not able to participate in the career for which she trained many years. The Plaintiff is an exemplary teacher. Defendant Edouard's personal dislike of the Plaintiff has created this unfortunate situation and the School Board of Miami Dade County has failed to act to stop the harassment, interference and retaliation. For the reasons stated, the Defendants' motion to dismiss the defamation claims must be denied.

## CONCLUSION

For the reasons set forth above, the Plaintiff opposes the withdrawal of the Defendants' Answers and their motion to dismiss the Complaint. The Defendants' legal counsel failed to present any legal principle that would support the withdrawal of the Answers. By submitting their responses to the Court, the Defendants violated Rule 11(b)(4) which states that, "...the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." The Defendants were aware that their responses were not truthful. For far too long the Defendants have engaged in telling so many falsehoods, lies by omission and just blatant lies about the Plaintiff. The statements submitted to this Court should remain a part of the record and their new legal counsel should have to deal with the consequences of the falsehoods they knowingly filed. The Defendants' Motion to Withdraw Answers and Motion to Dismiss should be denied.

Respectfully submitted,

Michelle Maupin, *pro se*
4408 SW 24th Street
West Park, FL 33023
9549979663
email: msmmaupin@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed today, on Monday, May 22, 2023, the foregoing

with the Federal Clerk of the Court for the Southern District of Florida, which will send

notification of such filing to all persons registered for this case, including the Defendants'

counsel.

Respectfully submitted,

Michelle Maupin, *pro se*

4408 SW 24th Street

West Park, FL 33023

Phone:  9549979663

email: msmmaupin@aol.com

26

## Re: Title IX 2021-22/IX/0111 - Question and Answer Period - Responses from Mr. Troy Howard

MAUPIN, MICHELLE <mmaupin@dadeschools.net>

Wed 11/30/2022 7:30 AM

To: Nieves, Sergio <sergionieves@dadeschools.net>

*Ex. 1*

Good morning,

Follow up questions for Mr. Howard are below.

1. Regarding your response to Question #5. As previously stated, the Respondent does not know Officer Samuels personally and has never spoken to him about your sexual orientation. When and where did Mrs. Wilson allege that the conversation between the Respondent and Officer Samuels take place?

2. Regarding your response to Question #6,
   a. When did you observe video evidence of the Respondent speaking to the family of AM?
   b. Who provided you access to the video?
   c. Summarize the conversation the Respondent had with the family as they were leaving YMPA.
   d. Why would the Respondent want to, "get Howard!"?

3. Regarding your response to Question #16, the Respondent has never seen the letter in question. Pierre Edouard admitted that Mrs. Sierra admitted that she was in possession of the letter students wrote about your behavior. When and where does Sierra allege that the Respondent assisted students writing the letter that she helped students compose?

Best,

Michelle Maupin, M. Ed.
Young Men's Preparatory Academy

---

**From:** Nieves, Sergio <sergionieves@dadeschools.net>
**Sent:** Monday, November 28, 2022 10:44 AM
**To:** MAUPIN, MICHELLE <mmaupin@dadeschools.net>
**Subject:** Title IX 2021-22/IX/0111 - Question and Answer Period - Responses from Mr. Troy Howard

Good morning Ms. Maupin,

Pursuant to the M-DCPS Title IX procedures manual, "Upon receipt of both parties' written and signed responses, the Decision-Maker will allow **two (2) days** for limited follow-up questions and **two (2) days** for written answers." Please refer to the Title IX Manual for more information regarding the *Written Question and Answer Process for M-DCPS K-12 Programs.* https://hrdadeschools.net/civilrights/Title%20IX%20Manual.pdf

Below are Mr. Howard's responses to your questions.

1. You stated that you heard that the there was a case in which there was a finding of probable cause against the Respondent. When did you hear that there was a case with a probable cause finding against the Respondent?

   This question was not deemed relevant by the Decision-Maker.

2. Who provided you with the information about the findings of a personnel investigation?
   This question was not deemed relevant by the Decision-Maker.

3. You stated that you heard that there were cases filed by the Respondent against Mrs. Ross and Mrs. Wilson. When did you hear that there were cases filed by the Respondent against Mrs. Ross and Mrs. Wilson?

I do not recall when I heard that there were cases filed by the respondent against Mrs. Ross and Mrs. Wilson.

4. Who provided you with the information regarding cases filed against coworkers?
   This question was not deemed relevant by the Decision-Maker.

5. You stated that Mrs. Wilson told you that the Respondent spoke to a school resource officer about you and Mr. Edouard. The Respondent does not know any school resource officers personally, who is the officer the Respondent allegedly spoke to about the alleged relationship between you and Mr. Edouard?
The school resource officer that respondent spoke to was an officer named Samuels.

6. You stated that you, "...know for a fact..." that the Respondent met with the family of AM prior to their meeting with District staff. What information do you have to prove that the Respondent met with the family?

There were eyewitnesses to conversations respondent had with student's father and stepmother in the school campus.  As well, there is video footage of such meeting.  As well, student told several other students and at least two teachers that respondent was helping him "get Howard!"

7. Were you aware that the Respondent was out of the building due to ADA accommodations for the entirety of the 2020-2021 school year?
   This question was not deemed relevant by the Decision-Maker.

8. Have you ever done anything that would make students, faculty and staff to be curious about your relationship with Mr. Edouard?
   This question was not deemed relevant by the Decision-Maker.

9. In response to an email from Dr. Menoutis sent May 12, 2021, at 8:32am regarding funeral arrangements, did you state that you, "have a special relationship with Mr. Edouard" and should be the one to order the flowers and food for his daughter's funeral?
   This question was not deemed relevant by the Decision-Maker.

10. In response to Dr. Menoutis' email sent May 14, 2021, at 10:33am, did you send an email to the faculty and staff indicating that you would send the food because you are aware of the Complainant's favorite food?
    This question was not deemed relevant by the Decision-Maker.

11. In another response to Dr. Menoutis' email sent May 14, 2021, at 10:33am, did you send the faculty and staff a copy of the receipt for food that you sent to yourself at the Complainant's home address instead of sending it to the "Family of..."?
    This question was not deemed relevant by the Decision-Maker.

12. Were you aware that, according to students, after sending those emails,
    This question was not deemed relevant by the Decision-Maker.

13. Mrs. Sierra started referring to you as 1st Lady of YMPA?
    This question was not deemed relevant by the Decision-Maker.

14. Were you aware that according to students, Mrs. Sierra and the family of AM were in contact regarding allegations against you?
    This question was not deemed relevant by the Decision-Maker.

15. Were you aware that Mrs. Sierra told students and faculty that you got away with everything because you and Mr. Edouard are in love?

I was not aware of this.

16. Were you aware that Mrs. Sierra assisted students in writing a letter to the District regarding behavior between you, Mr. Edouard and your inappropriate actions toward students at YMPA?

Mrs. Sierra vehemently denies that she assisted students in writing a letter to the District . She is willing to go on-record that it was the respondent who assisted the students in writing a letter to the District!

17. Were you aware that, aside from email, the Respondent had no contact with faculty, students, you and Mr. Edouard during the 2020-21 school year?
    This question was not deemed relevant by the Decision-Maker.

18. Were you aware that the Respondent was restricted from communicating with students, their families, faculty and staff during the 2021-2022 school year due to investigations filed against her by the Complainant?
    This question was not deemed relevant by the Decision-Maker.

19. Since the Respondent was restricted from speaking to students, their families, faculty and staff during the 2021-2022 school year, when and how do you allege that the Respondent spoke to the students, their families, faculty and staff regarding an alleged sexual relationship between you and the Complainant?
    This question was not deemed relevant by the Decision-Maker.

Thank you,

Sergio Nieves, Ed.D.
Executive Director/Deputy Title IX Coordinator
Office of Civil Rights Compliance
155 NE 15th Street, Suite P104E, Miami, FL 33132
sergionieves@dadeschools.net | 305-995-1580
www.dadeschools.net | www.hrdadeschools.net/civilrights

 **OFFICE OF HUMAN CAPITAL MANAGEMENT**
Miami-Dade County Public Schools 
**HCM** Education Focused | People Driven



Confidentiality Notice:
This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.



# Miami-Dade County Public Schools

## giving our students the world

**Superintendent of Schools**
Dr. Jose L. Dotres

**Miami-Dade County School Board**
Perla Tabares Hantman, Chair
Dr. Steve Gallon III, Vice Chair
Lucia Baez-Geller
Dr. Dorothy Bendross-Mindingall
Christi Fraga
Dr. Lubby Navarro
Dr. Marta Pérez
Mari Tere Rojas
Luisa Santos

March 29, 2022

Ms. Michelle Maupin
4408 SW 24th St.
West Park, Florida 33023

*Ex. 2*

Ms. Maupin:

You have been named as the subject in a complaint.  An investigation is being conducted with reference to the incident listed below, Case C-85531.

NAME OF COMPLAINANT(S):          Troy Howard

NATURE OF THE COMPLAINT:        Complainant (Lead Teacher) alleges that the subject allegedly creates conditions in her classroom which are harmful to students' health and safety; uses unethical practices that intimidate, embarrass, and demean students; uses her gradebook to harass and punish students for non-academic behavior; makes false allegations and coerces students against staff; uses abusive language in the workplace; leaves students unattended and harasses faculty and administration.

INVESTIGATIVE ENTITY:           Civilian Investigative Unit

You will be given an opportunity to respond to this complaint, in accordance with your rights as guaranteed by contract and/or policy.  When the investigation is completed, you will be notified.  As this is an open investigation, no other information can be provided at this time.  You are not to discuss this matter with any witnesses, parents, staff, students, or the complaining party to avoid interference with the investigation.

At the conclusion of this investigation, this case will be forwarded to the Office of Professional Standards.  If the complaint referred to above, is found to have Probable Cause, this is your notice, pursuant to Florida Statute 1012.31, that the parent of the student who was subjected to or affected by such misconduct shall receive written notification of the misconduct and of the disciplinary action taken (if any).

Should you require additional information, please contact this administrator at (305) 571-1111.

Sincerely,

Pierre Edouard
Principal

*EMPLOYEE REFUSED TO COME TO OFFICE TO RECEIVE*
*VERBAL/WRITTEN NOTIFICATION. 10:25 AM 03/29/22*
*Valerie Gilchrist -AP 3/29/22*
*VGilchrist   Email correspondence*
*was sent regarding the*
*scheduling of this meeting with*

cc:          Office of Professional Standards

_____
Signature acknowledges receipt of memorandum only

_____
Date

*10 minutes notice*
*Please check date and time of email*
*correspondence*

*Young Men's Preparatory Academy ◉ 3001 N.W. 2nd Avenue ◉ Miami, Florida 33127*
*(305)-571-1111 Office ◉ (305) 571-1112 Fax ◉ www.ympacademy.org*

*Attach to response to meeting email*

## AFFIDAVIT

Ex. 3

1. My name is Linda Cannady.
2. I was previously employed as a security monitor at Young Men's Preparatory Academy.
3. On or about November 3, 2021, I was doing a hall sweep as the bell rang for the change of classes.
4. Part of my duties while doing the hall sweep is to make sure all the kids were out of the bathroom.
5. As a female security monitor, I did not enter the bathroom, but I observed what I believed to be an older student using the bathroom with the stall door open.
6. From where I was standing outside of the bathroom, I could not see into the stall; however, students inside the bathroom had a clear view inside the stall.
7. I stood by the doorway of the bathroom and requested that everyone vacate the bathroom because the bell had already rung for the start of the class period.
8. When I requested that everyone leave the bathroom, Mr. Howard walked out of the open stall; several students followed Mr. Howard out of the bathroom.
9. I reported the incident to administration as it is a violation of protocol for teachers and students to use the bathroom at the same time.
10. Teachers are provided keys that unlock the adult bathrooms in the building.


Under penalties of perjury, I declare that I have read the foregoing and that the facts stated in it are true.

Date: 10/12/22

Signature:

On 1/18/2023, at 7056 Young Men's Preparatory Academy CIU Investigator, **Yvenson Delphonse** conducted a formal interview with **Ms. Lolamaria Robbio**, regarding allegations made against **Ms. Michelle Maupin**, for possibly violating the following School Board Policies:

- **3210 Standards of Ethical Conduct**
- **3210.01 Code of Ethics**
- **3213 Student Supervision and Welfare**

Ex. 4

Regarding case # **D-85301.**

The interview began at approximately ____10:09_____   ☒ AM      ☐ PM.

1. **Please state your name, title, school name, and employee ID number.**

> Ms. Lolamaria Robbio, Counselor at Young Men's Prep Academy, # ▓▓▓▓▓

1. **Do you consent to this interview?**

> Yes.

2. **Do you know Ms. Michelle Maupin?  If yes, how do you know her?**

> Yes, we work at the same school.

3. **Do you know Mr. A▓▓▓▓ T▓▓ (student)?  If yes, how do you know him?**

> Yes, he is a student at the school.

4. **This office is currently investigating an allegation that Ms. Maupin berated Mr. T▓▓ threatened to fail students and falsely accused the school administrator. How did you become aware of the alleged incident?**

> After dismissal, Mr. Eduard (principal) came to me in reference of a petition and he asked me if I printed a petition for A▓▓ T▓▓ However, I printed the document (petition) for A▓▓ before Mr. Eduard questioning about the document. I did not know the document was a petition.
>
> I found out about the alleged incident when A▓▓ sent me the audio recording. The audio recording was about the Ms. Maupin. A▓▓ and several students had come to me in the past complaining of Ms. Maupin. They complained of Ms. Maupin ripping their assignments and made them redo them whenever they used pencil. The students and A▓▓ are frustrated with Ms. Maupin, they made complaints of Ms. Maupin is always of her phone and computers and she refuses to help them with their assignments.

| Lolamaria Robbio, D85301 **Page 1** | Initials: _____ | Date: 1\|18\|23 |
|---|---|---|
| | Representative Initials: _____ | Date: _____ |